CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
10/11/2022
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| AMERICAN ALTERNATIVE INSURANCE CORPORATION, | |
| Plaintiff, | |
| v. | Case No.:  6:22cv00059 |
| LEGACY INTERNATIONAL; WORLD COMMUNITY; JEFFREY E. RASH; and M.B., | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, American Alternative Insurance Corporation ("AAIC"), by and through its undersigned counsel, for its Complaint for Declaratory Judgment against Defendants, Legacy International ("Legacy"), World Community ("World Community"), Jeffrey E. Rash ("Rash"), and M.B. (collectively, "Defendants"), alleges as follows:

### NATURE OF THE ACTION

1.  This is an action for declaratory judgment and other relief, brought pursuant to 28 U.S.C. §§ 2201 and 2202, for the purpose of resolving an actual controversy between the parties regarding their respective rights and obligations under lost or destroyed insurance policies that AAIC allegedly issued to Legacy and World Community, under which Rash purports to be an insured. In particular, AAIC seeks a declaration that it owes no defense or indemnity obligation under the subject insurance policies with respect to its purported insureds' alleged liability in an underlying civil lawsuit pending in the Circuit Court for the County of Bedford, Commonwealth of Virginia, styled *M.B. v Legacy International., et al.*, No. CL21002158-00 (the "Underlying Lawsuit").

**THE PARTIES AND CITIZENSHIP**

2. AAIC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Princeton, New Jersey. AAIC is authorized to transact the business of insurance within the Commonwealth of Virginia.

3. Upon information and belief, Legacy is a nonstock corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business in Bedford, Virginia.

4. Upon information and belief, World Community is a nonstock corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Bedford, Virginia.

5. Upon information and belief, Rash is a citizen of the Commonwealth of Virginia and a resident of Bedford County, Virginia.

6. Upon information and belief, M.B. (a pseudonym in accordance with Va. Code § 8.01-15.1) is a citizen of the Commonwealth of Virginia. M.B. is joined to the extent she is a necessary and indispensable party to this action and to ensure that she is bound by any judgment rendered herein.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a), because complete diversity exists between the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8. In declaratory judgment actions based on diversity jurisdiction, it is well-established that the amount in controversy is measured by the value of the object of the litigation, including the pecuniary effect an adverse declaration will have on either party to the lawsuit.

9. In the present matter, if AAIC does not prevail, it will be required to defend, and possibly indemnify, its purported insureds in the Underlying Lawsuit.

10. In the Underlying Lawsuit, M.B. seeks $25 million in compensatory damages and $50 million in punitive damages.

11. Accordingly, there is no question that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

12. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this claim occurred within this district.

## THE ALLEGATIONS IN THE UNDERLYING LAWSUIT

13. On or about August 13, 2021, M.B. filed the Underlying Lawsuit. (A true and correct copy of the Complaint filed in the Underlying Lawsuit is attached hereto as Exhibit 1.)

14. The Underlying Lawsuit arises from Rash's grooming and repeated sexual abuse of M.B., a minor, which occurred between 1994 and at least 1998 at a residential compound, camps, and events owned, operated, and/or sponsored by Legacy and World Community.

15. M.B. alleges that Legacy and World Community jointly occupied, operated, maintained, and controlled numerous single-family homes, buildings, common areas, and appurtenances on various properties located in Bedford, Virginia (the "Legacy Compound").

16. M.B. contends that, since their founding in 1979, Legacy and World Community have been in the business of organizing, hosting, and staffing camps, getaways, and events for children and youths at the Legacy Compound and at other locations.

17. Rash has allegedly served as President of Legacy and World Community from 1979 through the present.

18. M.B. alleges that Legacy and World Community have, at all relevant times, expressly and impliedly invited families and their children, including M.B. and her family, to enter, remain, and reside at the Legacy Compound under their custody and control.

19. Families and family members, including M.B., who resided at the Legacy Compound were allegedly required to abide by rules and procedures of governance that were prescribed and enforced by Legacy and World Community.

20. According to M.B., Legacy and World Community bestowed upon Rash an almost limitless power to direct actions of families and children at the Legacy Compound, including where families and children were to reside, how they were to be educated, and whether or not they were to spend time with Rash.

21. M.B. alleges that, before 1993, and at all relevant times, Legacy and World Community knew that Rash was a child sexual predator and was, whenever left alone with a child, an imminent danger to them within the community and at the Legacy Compound.

22. Rash's grooming patterns and behaviors allegedly included requesting and insisting that minors kiss him on the cheek, which later progressed to requests and his insisting that minors kiss him on the mouth.

23. From there, Rash allegedly progressed to grooming minors to perform sexual acts upon him.

24. According to M.B., at all relevant times, the affairs of Legacy and World Community, including hiring, retaining, and firing employees, were managed and conducted by their respective Boards of Directors.

25. M.B. claims that, at all relevant times, Legacy and World Community's Boards of Directors were capable of meeting as a quorum to conduct the business and affairs of the

organizations, including decisions to prohibit Rash from participating in events in which minor girls participated, to limit Rash's interactions with minor girls who were in Legacy and World Community's custody and control, and to otherwise mandate and enforce reasonable measures to protect minor girls from Rash.

26. M.B. alleges that Rash's grooming patterns and behaviors were well known among leaders of the Legacy Compound before 1993, including the Boards of Directors of Legacy and World Community, "to the point that leaders and directors at the Legacy Compound would inform minor girls and young adult females that it was a privilege or honor that Rash requested a mouth-to-mouth kiss, performed a mouth-to-mouth kiss, or requested private time with them."

27. On or about January 9, 1994, M.B. was a 14-year-old minor residing at the Legacy Compound under the care, control, custody, and supervision of Legacy and World Community.

28. M.B. alleges that, on or about January 9, 1994, Rash sexually assaulted her.

29. M.B. asserts that, following the encounter referenced in Paragraph 28, above, leaders of the Legacy Compound community commented to M.B. that she was "special" because of Rash's behavior toward her and that she should be careful around others because it was well known among leaders and directors of the community that Rash had affection for her.

30. According to M.B., the statements referenced in Paragraph 29, above, demonstrated their knowledge of Rash's sexually predatory behavior toward minor girls and their knowledge of his sexual abuse of M.B.

31. M.B. alleges that as the days, weeks, and months progressed, Rash forcefully, with intimidation and threat of punishment, would sexually assault her.

32. Rash allegedly raped M.B. for the first time in the spring of 1994, after which he allegedly continued to rape and sexually abuse M.B. multiple times per week.

33. Beginning in or around the spring of 1994, Rash allegedly called M.B.'s classroom every day insisting that M.B. be let out of class to come see him.

34. M.B. alleges that such requests to be removed from the classroom were not typical for all children and, given their knowledge of Rash's propensity to sexually abuse minors and his grooming patterns, the teachers—who were all employed by Legacy and World Community—knew that Rash was gaining private access to M.B. to sexually abuse her.

35. During the summer of 1994 or 1995, agents and employees of Legacy and World Community received reports that Rash was "having an affair" with M.B.

36. Accordingly, M.B. contends that, in or around 1994 or 1995, the Boards of Directors of Legacy and World Community knew that Rash was continuously and systematically sexually abusing M.B.

37. Rash's sexual abuse of M.B. allegedly continued through 1996, 1997, and 1998.

38. While M.B. was still a minor, she ceased living with her parents on the Legacy Compound and moved to a property where Rash could be closer to her.

39. Soon after M.B. moved away from her parents, Rash allegedly openly referred to M.B. as one of his "wives" within the community.

40. M.B. alleges that Legacy and World Community encouraged, ratified, and condoned all of Rash's assaults.

41. In or around April 2007, M.B. allegedly left the Legacy Compound and disconnected from Rash, Legacy, and World Community.

42. On May 23, 2017, M.B. was admitted to an inpatient psychiatric facility for treatment, where she was diagnosed with post-traumatic stress disorder and other related anxiety and mental health disorders.

43. M.B. alleges that because of the aforementioned, she has been required to pay medical expenses and has suffered and will continue to suffer from permanent bodily injuries, physical pain, mental anguish, disfigurement and/or deformity, coupled with associated humiliation and embarrassment, inconvenience, lost earnings and a reduced earning capacity, and personal, social, and financial limitations.

44. M.B.'s claims are set forth in nine causes of action:

| | |
|---|---|
| Count I | Assault and Battery (Rash) |
| Count II | Negligence, Gross Negligence, and Reckless Disregard – Breach of Common Law Duty of Supervision and Care (Legacy and World Community) |
| Count III | Negligence, Gross Negligence, and Reckless Disregard – Breach of Duty Arising From Special Relationship (Legacy and World Community) |
| Count IV | Vicarious Liability (Legacy and World Community) |
| Count V | Negligence, Gross Negligence, and Reckless Retention (Legacy and World Community) |
| Count VI | Assault and Battery Under New York Law (Rash) |
| Count VII | Negligence, Gross Negligence, and Reckless Retention and Supervision Under New York Law (Legacy and World Community) |
| Count VIII | Negligence, Gross Negligence, and Recklessness – Breach of Duty Arising Out of Special Relationships Under New York Law (Legacy and World Community) |
| Count IX | Vicarious Liability Under New York Law (Legacy and World Community) |

**AAIC'S PRELIMINARY CLAIMS HANDLING**

45. In or around October 2021, AAIC received notice of the Underlying Lawsuit.

46. On or about October 19, 2021, Munich Reinsurance America, Inc. ("Munich Re"), on behalf of AAIC, sent a letter to Legacy and World Community reflecting AAIC's

agreement to defend each organization in the Underlying Lawsuit, subject to a reservation of rights.

47. Legacy and World Community were given an opportunity to select independent defense counsel to represent their interests in the Underlying Lawsuit.

48. On September 15, 2022, Munich Re, on behalf of AAIC, sent another letter to Legacy and World Community supplementing and clarifying AAIC's coverage position.

49. The October 19, 2021 and September 15, 2022 letters fairly inform Legacy and World Community of the various grounds on which coverage for the Underlying Lawsuit may be precluded or limited, for which AAIC reserved all rights under the putative AAIC Policies.

50. An actual, present, and justiciable controversy has arisen and now exists between the parties regarding their respective rights, duties, and obligations under policies that AAIC allegedly issued to Legacy and World Community, including whether AAIC has any defense or indemnity obligation thereunder based on the facts alleged in the Underlying Lawsuit.

## **THE AAIC POLICY**

51. AAIC is alleged to have issued a series of insurance policies to Legacy and World Community for successive annual periods effective from June 2, 1996 to June 2, 1999 (the "AAIC Policies").

52. None of the policy declarations, schedules, and forms has been located.

53. Upon information and belief, the AAIC Policies bear policy numbers 09-A2-CP-0000031-00, 09-A2-CP-0000031-01, and 09-A2-CP-0000031-02.

54. The vast majority of the policy documents containing the relevant terms, conditions, limitations, endorsements, and exclusions of the AAIC Policies were destroyed in accordance with AAIC's record retention policy.

55. Though unconfirmed, the AAIC Policies are believed to have provided Commercial General Liability ("CGL") insurance under ISO Form CG 00 01 01 96, and to contain liability limits of $1 million each "occurrence"[1] and $2 million general aggregate. (A specimen ISO Form CG 00 01 01 96 is attached hereto as Exhibit 2.)

56. ISO Form CG 00 01 01 96 provides the following, in relevant part:

\* \* \*

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period;

\* \* \*

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . .

---

[1] Terms in quotation marks are defined in the referenced ISO Form believed to be contained in the AAIC Policies.

\*   \*   \*

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   \*   \*   \*

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . .

   \*   \*   \*

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*   \*   \*

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;
   **(2)** The names and addresses of any injured persons and witnesses; and
   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   \*   \*   \*

   **c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

\*   \*   \*

**SECTION V – DEFINITIONS**

\*   \*   \*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*   \*   \*

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*   \*   \*

### COUNT I – DECLARATORY RELIEF
### (The Purported Insureds Cannot Meet Their Burden
### to Establish the Existence and Terms of the AAIC Policies)

57. AAIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

58. Legacy, World Community, and Rash purport to be insureds under the AAIC Policies.

59. The AAIC Policies were destroyed, and the terms and scope of the policies are largely unknown.

60. Legacy, World Community, and Rash, as the parties seeking to enforce or recover under missing policies, bear the burden of proving the existence and terms of the AAIC Policies by clear and convincing evidence.

61. To date, Legacy, World Community, and Rash have failed to establish the existence, execution, delivery, or contents of any destroyed policy that ostensibly affords coverage to them.

62. Legacy, World Community, and Rash have not and, upon information and belief, cannot satisfy their burden of proving the existence and terms of any destroyed policy that ostensibly affords coverage to them.

63. In the absence of clear and convincing evidence demonstrating that Legacy, World Community, and Rash were insureds under any policy issued by AAIC, AAIC owes no duty to defend or indemnify such parties in the Underlying Lawsuit.

## COUNT II – DECLARATORY RELIEF
### (Rash Is Not An Insured Under the AAIC Policies)

64. AAIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

65. AAIC's coverage obligations extend only to the liability of certain persons or entities qualifying as insureds under the AAIC Policies.

66. With respect to a Named Insured that is an organization other than a partnership, joint venture, or limited liability company, the Named Insured's "employees" are insureds, but only for acts within the scope of their employment for the Named Insured or while performing duties related to the conduct of the Named Insured's business.

67. To the extent Rash was an "employee" of a Named Insured under the AAIC Policies at all relevant times, his alleged acts of sexual assault and sexual abuse were not naturally incident to his job nor performed with the intent to further the Named Insured's business.

68. Rather, Rash's alleged acts of sexual assault and sexual abuse were committed based on external and independent self-serving motives.

69. Accordingly, Rash does not constitute an insured "employee" under the AAIC Policies, given the facts alleged in the Underlying Lawsuit.

## COUNT III – DECLARATORY RELIEF
### (M.B.'s "Bodily Injury" Was Not Caused By an "Occurrence")

70. AAIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

71. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

72. An accident is an event that takes place without one's foresight or expectation, or an undesigned, sudden, and unexpected event.

73. In this regard, the terms "occurrence" and "accident" refer to an incident that was unexpected from the viewpoint of the insured.

74. Intentional acts are neither "occurrences" nor "accidents" and are, therefore, not covered by the standard CGL policy.

75. Consequently, if a result is the natural or probable consequence of an insured's intentional act, it is not an "accident" unless the alleged injury results from an unforeseen cause that is out of the ordinary expectations of a reasonable person.

76. With respect to Rash, to the extent he even constitutes an "insured" (which AAIC does not concede), all of the conduct for which he may be liable in the Underlying Lawsuit was intentional and, thus, not an "accident" or "occurrence."

77. Likewise, with respect to Legacy and World Community, M.B.'s injuries, as alleged, did not result from unforeseen consequences that were not natural or probable consequences of Legacy and World Community's actions.

78. To the contrary, leaders and members of the Boards of Directors of Legacy and World Community allegedly knew that Rash was sexually abusing M.B.

79. In particular, Legacy and World Community allegedly possessed knowledge, long before the inception of the first AAIC Policy: (1) of Rash's grooming patterns; (2) that M.B. was groomed and being groomed consistent with Rash's patterns; (3) that M.B. often spent time alone with Rash; (4) that Rash removed M.B. from class to meet with him in private; (5) that Rash asked M.B. to move into his home at the Legacy Compound and thereafter referred to M.B. as one of his wives; and (6) of Rash's sexually predatory behavior toward minor girls and of his sexual abuse of M.B.

80. Nevertheless, Legacy and World Community are alleged not only to have failed to act to protect M.B. from Rash's sexual abuse, but also to have expressly encouraged, ratified, and condoned all of Rash's sexual abuse.

81. The alleged continued and repeated sexual abuse of M.B. was the natural or probable consequence of Legacy and World Community's alleged intentional acts and intentional failures to act.

82. Accordingly, as it relates to Legacy and World Community, M.B.'s "bodily injury" was not caused by an "occurrence."

83. AAIC has no duty to defend Legacy, World Community, or Rash in the Underlying Lawsuit on this basis.

### COUNT IV – DECLARATORY RELIEF
### (The Expected or Intended Injury Exclusion Bars Coverage)

84. AAIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

85. An exclusion contained in the AAIC Policies is believed to provide that the insurance under Coverage A of the CGL Coverage Form does not apply, in relevant part, to "bodily injury" expected or intended from the standpoint of the insured.

86. Based on the allegations in the Underlying Lawsuit, Rash necessarily committed the numerous acts of sexual abuse upon M.B. with the intention and expectation that M.B. would suffer "bodily injury."

87. There is nothing in the allegations asserted in the Underlying Lawsuit from which it may reasonably be inferred that Legacy and World Community's acts of encouragement, ratification, and glorification of Rash's sexual abuse, and their intentional failures to act to protect M.B. at any time, were not committed with the intention and expectation that M.B. would suffer "bodily injury."

88. Accordingly, even if the Underlying Lawsuit is construed as seeking damages because of "bodily injury" caused by an "occurrence," all such damages are excluded from coverage pursuant to the Expected or Intended Injury exclusion.

89. AAIC has no duty to defend Legacy, World Community, or Rash in the Underlying Lawsuit on this basis.

## COUNT V – DECLARATORY RELIEF
**(The Doctrines of Known Loss, Fortuity, and Loss-In-Progress Bar Coverage)**

90. AAIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

91. It is a fundamental premise of insurance law that a loss must be fortuitous in order to potentially be covered.

92. Losses that exist before the commencement of coverage, or which are so probable or imminent that there is insufficient risk being transferred between the insured and insurer are not proper subjects of insurance.

93. In the Underlying Lawsuit, M.B. alleges that leaders and members of the Boards of Directors of Legacy and World Community became aware of Rash's sexual abuse of M.B. immediately after the initial assault committed on January 9, 1994.

94. The first of the AAIC Policies allegedly became effective on June 2, 1996.

95. Based on the doctrines of known loss, fortuity, and loss-in-progress, there is no potentiality of coverage for Legacy, World Community, or Rash under the AAIC Policies.

### COUNT VI – DECLARATORY RELIEF
### (Rescission)

96. AAIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

97. Legacy and World Community applied for insurance before the issuance and inception of the first AAIC Policy and submitted renewal applications for later AAIC Policies issued thereafter.

98. Despite allegedly having knowledge of Rash's ongoing sexual abuse of M.B. dating back to at least January 1994, Legacy and World Community did not disclose such information in its initial application for insurance and in subsequent renewal applications.

99. Legacy and World Community's statements and representations in the applications for insurance were material to the risk assumed by AAIC when it issued the AAIC Policies and were untrue.

100. The untrue statements and representations contained in Legacy and World Community's applications for insurance were knowingly false.

101. Truthful statements and representations in Legacy and World Community's applications for insurance would have reasonably influenced AAIC's decision to issue the AAIC Policies.

102. Indeed, AAIC would not have issued any of the AAIC Policies if the existence and extent of the exposure for Rash's ongoing sexual abuse of M.B. was disclosed in Legacy and World Community's applications for insurance.

103. Accordingly, AAIC is entitled to rescind the AAIC Policies, thus voiding any potential coverage available thereunder.

## COUNT VII – DECLARATORY RELIEF
### (Legacy and World Community Breached the Notice Requirements of the AAIC Policies)

104. AAIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

105. Section IV.2.A. (Duties in the Event of "Occurrence," Offense, Claim, or "Suit") of the CGL Coverage Form provides that the Named Insureds must notify AAIC "as soon as practicable" of an "occurrence" which may result in a claim.

106. In the Underlying Lawsuit, M.B. alleges that leaders and members of the Boards of Directors of Legacy and World Community became aware of Rash's sexual abuse of M.B. immediately after the initial incident of abuse on January 9, 1994, and that they continued to amass information regarding Rash's ongoing sexual abuse of M.B. in the years that followed.

107. The repeated and ongoing sexual abuse of a minor is sufficiently serious as to lead a person of ordinary intelligence and prudence to believe that such acts might give rise to a claim for damages.

108. Legacy and World Community should reasonably have perceived their alleged failures to ensure the safety of M.B. while in their care, custody, and control, which resulted in repeated and ongoing sexual abuse, to be a reportable "occurrence" under the AAIC Policies.

109. Legacy and World Community should reasonably have believed that they would likely be subject to a claim arising from the repeated and ongoing sexual abuse of M.B. while in their care, custody, and control.

110. Despite having knowledge, dating back to January 1994, of Rash's repeated and ongoing sexual abuse of M.B., Legacy and World Community waited approximately 27 years before finally notifying AAIC of the underlying incidents and of their potential liability for the same.

111. Under the facts and circumstances described herein, a 27-year delay in notifying AAIC of the underlying "occurrence" was unreasonable and constitutes a breach of the notice requirements of the AAIC Policies.

112. Compliance with the notice requirements of the AAIC Policies is a contractual precondition to coverage.

113. Legacy and World Community's breach of the notice requirements in the AAIC Policies was substantial and material.

114. Legacy and World Community's failure to timely notify AAIC of the "occurrence" releases AAIC from any obligation or liability under the AAIC Policies.

### COUNT VIII – DECLARATORY RELIEF
### (Recoupment of Defense Costs)

115. AAIC restates and incorporates by reference each and every allegation set forth in the preceding paragraphs as though set forth in full herein.

116. By letter dated September 15, 2022, AAIC advised Legacy and World Community of AAIC's agreement to continue to provide each organization with a defense in the Underlying lawsuit subject to a reservation of rights.

117. The September 15, 2022 letter expressly reserved AAIC's right to seek reimbursement of the fees and costs incurred in connection with the purported insureds' defense in the Underlying Lawsuit that are allocable to claims not potentially covered by the AAIC Policies.

118. AAIC has incurred, and will continue to incur, legal fees and expenses relating to the defense of the Underlying Lawsuit.

119. To the extent it is later determined that there is no coverage available to the purported insureds under the AAIC Policies, AAIC is entitled under Virginia law to reimbursement of all costs and expenses incurred in AAIC's defense of the insureds from September 15, 2022 going forward.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff American Alternative Insurance Corporation respectfully requests that this Court enter judgment in its favor, and against all Defendants, as follows:

(a) Declaring that AAIC owes no duty to defend or indemnify Legacy, World Community, and Rash under the AAIC Policies with respect to the Underlying Lawsuit;

(b) Declaring that AAIC is entitled to recoupment of defense costs and expenses incurred on behalf of Legacy and World Community in the Underlying Lawsuit; and

(c) Granting AAIC any other and further such relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff American Alternative Insurance Corporation hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

Dated:  October 11, 2022	Respectfully submitted,

                /s/ Brian J. Brydges
                Brian J. Brydges
                Va. State Bar No. 43883
                JOHNSON, AYERS & MATTHEWS, P.L.C.
                310 First Street, SW, Suite 700
                Roanoke, VA 24011-1606
                Telephone: (540) 767-2000
                Email:  bbrydges@jamlaw.com

                Jordon S. Steinway*
                Katherine A. Martin*
                BATESCAREY LLP
                191 North Wacker, Suite 2400
                Chicago, IL 60606
                Telephone: (312) 762-3169
                Email:  jsteinway@batescarey.com
                *Pro Hac Vice Admission to Be Filed*