UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
12/6/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
        DEPUTY CLERK

| | |
|---|---|
| AMERICAN ALTERNATIVE INSURANCE CORPORATION,<br><br>*Plaintiff*,<br><br>v.<br><br>LEGACY INTERNATIONAL, *et al.*,<br><br>*Defendants*. | CASE NO. 6:22-cv-00059<br><br>MEMORANDUM OPINION<br>& ORDER<br><br>JUDGE NORMAN K. MOON |

American Alternative Insurance Corporation (or AAIC) has brought this declaratory judgment action, seeking a declaration that it owes no duty for defense or indemnity for Legacy International or World Community in an underlying state tort case pending in Bedford County Circuit Court. Both the plaintiff in the underlying state tort case, M.B., as well as the defendants Legacy International and World Community, have moved this Court to dismiss this declaratory judgment action or stay it pending the outcome of the tort case pending in state court. Upon the Court's consideration of the "*Nautilus*" factors that the Fourth Circuit identified as governing a district court's exercise of jurisdiction over a declaratory judgment action while an underlying state tort case is pending, the Court determines that, on balance, such factors demonstrate that exercising jurisdiction is proper and that a stay would be inappropriate. The motions to dismiss or stay are therefore denied.

Background

1. *Underlying State Tort Action*

On August 13, 2021, M.B. filed a complaint in Bedford County Circuit Court. Dkt. 1-1 ("Va. Compl."). In it, she alleges that Jeffrey Rash, who has served as president of Legacy and

1

World Community since 1979 (and through to the present), sexually abused her from 1994 to 1998. Legacy and World Community were in the business of organizing "camps, getaways, and events for children … at the Legacy Compound" located in Beford. Dkt. 1 ("Compl.") ¶¶ 13–17.

M.B. alleges that Legacy and World Community knew that Rash was a sexual predator before 1993. *Id.* ¶ 21. His "grooming patterns and behaviors allegedly included requesting and insisting that minors kiss him on the check, which later progressed to requests and insisting that minors kiss him on the mouth. From there, Rash allegedly progressed to grooming minors to perform sexual acts upon him." *Id.* ¶¶ 22–23. M.B. further alleges that these patterns were well known to Legacy and World Community and their boards of directors, "to the point that leaders and directors at the Legacy Compound would inform minor girls and young adult females that it was a privilege or honor that Rash requested a mouth-to-mouth kiss, performed a mouth-to-mouth kiss, or requested private time with them." *Id.* ¶ 26.

In January 1994, M.B. was a 14-year-old minor residing at the Legacy Compound under those organizations' care. *Id.* ¶ 27. On January 9, 1994, M.B. alleges that Rash sexually assaulted her. *Id.* ¶ 28. M.B. further alleges that he sexually assaulted her on numerous later occasions, "with intimidation and threat of punishment," which progressed to "rap[ing] and sexually abus[ing] M.B. multiple times per week." *Id.* ¶¶ 31–32. In the spring of 1994, Rash "called M.B.'s classroom every day insisting that [she] be let out of class to come see him." *Id.* ¶ 33. In the summer of 1994 or 1995, employees of Legacy and World Community "received reports that Rash was 'having an affair' with M.B." *Id.* ¶ 35. This sexual abuse "continued through 1996 [to] 1998." *Id.* ¶ 37. "While M.B. was still a minor, she ceased living with her parents on the Legacy Compound and moved to a property where Rash could be closer to her." *Id.* ¶ 38. Soon thereafter, "Rash … openly referred to M.B. as one of his 'wives' within the community." *Id.* ¶ 39. In April 2007, M.B. left the Legacy Compound and disconnected from

Rash, Legacy and World Community. *Id.* ¶ 41. In 2017, she was admitted to an inpatient psychiatric facility for treatment, and was diagnosed with post-traumatic stress disorder and other mental health disorders. *Id.* ¶ 42.

In August 2021, M.B. filed her civil complaint in Bedford County Circuit Court. *See generally* Va. Compl. She raised assault and battery claims against Rash including under New York law (Counts 1 and 6). M.B. also brought numerous claims against Legacy and World Community, which included: "Negligence, Gross Negligence, and Reckless Disregard – Breach of Common Law Duty of Supervision and Care" (Count 2); "Negligence, Gross Negligence, and Reckless Disregard – Breach of Duty Arising from Special Relationship" (Count 3); "Vicarious Liability" (Count 4); "Negligent, Grossly Negligent and Reckless Retention" (Count 5); "Negligent, Grossly Negligent, and Reckless Retention and Supervision under New York Law" (Count 7); "Negligence, Gross Negligence, and Recklessness – Breach of Duty Arising Out of Special Relationships Under New York Law" (Count 8), and "Vicarious Liability Under New York Law" (Count 9). *See* Va. Compl. at pp. 12–23; Compl. ¶ 44.

2. *Notice to AAIC*

In October 2021, AAIC received notice of the underlying suit. Compl. ¶ 45. Munich Reinsurance, on behalf of AAIC, sent a letter to Legacy and World Community reflecting AAIC's agreement to defend each organization in the underlying suit, subject to a reservation of rights. *Id.* ¶ 46.

The next year (September 2022), Munich Re on behalf of AAIC sent another letter to the organizations "supplementing and clarifying AAIC's coverage position." *Id.* ¶ 48. The letter included various grounds on which coverage may be precluded. *Id.* ¶ 49.

3

3. *AAIC Policies & Position*

AAIC states that while it "is alleged to have issued a series of insurance policies to Legacy and World International for successive annual periods effective from June 2, 1996 to June 2, 1999," "[n]one of the policy declarations, schedules, and forms have been located." *Id.* ¶¶ 51–52. According to AAIC, "[t]he vast majority of the policy documents containing the relevant terms, conditions, limitations, endorsements, and exclusions of the AAIC Policies were destroyed in accordance with AAIC's record retention policy." *Id.* ¶ 54.

Nonetheless, AAIC alleges on "information and belief" that these insurance policies at issue bear specific policy numbers: "09-A2-CP-0000031-00, 09-A2-CP_0000031-01," and "09-A2-CP-0000031-02." *Id.* ¶ 53. In its view, though "unconfirmed," these AAIC policies "are believed to have provided Commercial General Liability ('CGL') insurance under ISO Form CG 00 01 01 96, and to contain liability limits of $1 million each 'occurrence' and $2 million general aggregate." *Id.* ¶ 55. AAIC further provides a general "specimen" of the form policy language. *Id.* ¶¶ 55–56.

The relevant policy language included the following:

SECTION I – COVERAGES

COVERAGE   A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply …

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period;

    . . .

2. Exclusions

 This insurance does not apply to:

  a. Expected or Intended Injury

  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured …

SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

 …

 d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

 a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

 …

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

…

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

 a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

  (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and
      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

…

  c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

…

SECTION V – DEFINITIONS

…

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

Compl. at pp. 9–11 (citing ISO Form CG 00 01 01 96).

    4. *Federal Declaratory Judgment Case*

In October 2022, AAIC filed this federal declaratory judgment action in this Court, naming as defendants Legacy, World Community, Jeffrey Rash and M.B. *See generally* Compl. Therein, AAIC seeks a declaration that "it owes no defense or indemnity obligation under the subject insurance policies with respect to [Legacy, World Community and Rash's] alleged liability" in the state tort action M.B. filed in the Circuit Court for Bedford County. *Id.* ¶ 1. AAIC asserts that an actual, present and justiciable controversy now exists between the parties, "including whether AAIC has any defense or indemnity obligation thereunder based on the facts alleged in the [state tort case]." *Id.* ¶ 50.

AAIC brings a number of counts seeking various forms of declaratory relief. At the outset, AAIC contends that Legacy, World Community and Rash cannot meet their burden to establish the existence and terms of the AAIC policies (Count 1). AAIC also seeks a declaration that, under its policy terms, Rash is not an "insured" (Count 2) and that M.B.'s injury was not caused by an "occurrence" (Count 3). Further, AAIC contends that the expected or intended injury exclusion bars coverage (Count 4), as do the doctrines of "known loss," "fortuity," and "loss-in-progress" (Count 5). AAIC also seeks rescission of its policies and declaratory relief that Legacy and World Community breached the notice requirements of AAIC's policies (Counts 6 and 7). Finally, AAIC seeks recoupment of defense costs incurred thus far in the litigation (Count 8).

AAIC has since reached a settlement with Jeffrey Rash and has stipulated to his dismissal from the case. Dkt. 29. Legacy and World Community filed one motion to dismiss, and M.B. has filed another. Dkts. 17, 30. The motions have been fully briefed, Dkts. 18, 26, 28, 31, 34, 35, and argument heard thereon, Dkt. 37.

## Standard of Review

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). It does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "This pleading standard does not require detailed factual allegations." *ACA Fin. Guar. Corp.*, 917 F.3d at 211 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, "[t]o meet the Rule 8 standard and 'survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Nadendla v. WakeMed*, 24 F.4d 299, 305 (4th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *King*, 825 F.3d at 212. However, the Court need not "accept the legal conclusions drawn from the facts," or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United. Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (internal quotes omitted).

## Applicable Law

"Under the Declaratory Judgment Act … upon the proper pleading by an interested party, a district court *may declare* their rights and other legal relations." *Med. Mut. Ins. Co. of N.C. v. Littaua*, 35 F.4th 205, 208–09 (4th Cir. 2022) (cleaned up) (emphasis in original). This Act "merely permits" federal courts to hear those cases "rather than granting litigants a right to judgment." *Id.* When a declaratory judgment action under § 2201 "is filed in federal court while a parallel state case is pending," the Fourth Circuit has recognized that "courts have broad discretion to abstain from deciding declaratory judgment actions." *Id.* (citing *VonRosenberg v. Lawrence*, 781 F.3d 731, 734 (4th Cir. 2015)).

The Fourth Circuit has explained that hearing declaratory judgment actions in federal court while a parallel state case is pending "is ordinarily uneconomical, vexatious, and risks a gratuitous interference with state court litigation." *Littaua*, 35 F.4th at 208. Still, "a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and … when it will terminate and afford relief from

uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

Accordingly, a district court must consider the *Nautilus* factors to determine whether it should hear a declaratory judgment action. They are:

(1) whether the state has a strong interest in having the issues decided in its courts;

(2) whether the state courts could resolve the issues more efficiently than the federal courts;

(3) whether the presence of "overlapping issues of act or law" might create unnecessary "entanglement" between the state and federal courts; and

(4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum shopping.

*Littaua*, 35 F.4th at 208–09 (citing originally *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376–77 (4th Cir. 1994), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)).

### *Nautilus* Factors

Based upon the Court's weighing of the *Nautilus* factors, it concludes that dismissal or a stay pending resolution of the state tort case is inappropriate.[1]

1. *State Interests*

Turning to the first factor—whether the state has a strong interest in having the issues decided in its courts—M.B. contends that this factor tilts in favor of dismissal. Dkt. 18 at 6–7. In

---

[1] M.B.'s argument and reasoning in support of her alternative motion for a stay pending resolution of the state tort case are materially similar to her motion that this Court dismiss this case pending resolution of state court proceedings. *See* Dkt. 18 at 8. This Court therefore will also consider the requests for relief together. *See Builders Mut. Ins. Co. v. Futura Grp., L.L.C.*, 779 F. Supp. 2d 529, 533 (E.D. Va. 2011) (explaining that the *Nautilus* factors "apply to both motions to dismiss declaratory judgment actions and motions to stay the proceedings").

particular, M.B. argues that "[t]he insurance and contract issues raised by AAIC's Complaint are matters in which [Virginia] has a strong interest." Dkt. 18 at 6; *see also* Dkt. 31 at 4 (Legacy and World Community adopting M.B.'s "well-articulated presentation of the *Nautilus* factors"). While Virginia generally has an interest in resolving contract and insurance issues arising under Virginia law, *Am. Motorists Ins. Co. v. Commonwealth Med. Liab. Ins. Co.*, 306 F. Supp. 2d 576, 581 (E.D. Va. 2004), that interest is "weaken[ed] somewhat" where, as here, "the relevant state law is not problematic or difficult to apply," *Poston*, 88 F.3d at 258.

Indeed, this case involves "the routine application of settled principles of insurance law to particular disputed facts." *See Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006). AAIC's complaint raises issues including whether its commercial general liability policy—which covers "employees" of an insured for acts within the scope of their employment, or while performing duties related to the conduct of the insured's business—covers Rash, Compl. ¶¶ 64–69; and whether M.B.'s bodily injury was caused by an "occurrence," within the meaning of the AAIC CGL policy, *id.* ¶¶ 70–83. As M.B. acknowledges, "state courts have decided issues relating to whether an intentional act qualifies as an 'occurrence.'" Dkt. 28 at 2. These are well-worn principles of Virginia insurance law. *Utica Mut. Ins. Co. v. Travelers Indem. Co.*, 286 S.E.2d 225, 226 (Va. 1982). And they have been applied in similar declaratory judgment actions in which an insurer sought a determination as to insurance coverage for claims involving sexual molestation of a minor. *Scottsdale Ins. Co. v. Doe*, No. 7:13-cv-342, 2014 WL 5497701, at *4–7 (W.D. Va. Oct. 30, 2014); *S.F. (Jane Doe) v. W. Am. Ins. Co.*, 463 S.E.2d 450, 452 (Va. 1995). Nor has any party identified any especially complex or novel issue of Virginia law that is expected to arise in this declaratory judgment action. *See* Dkt. 18 at 6–7; Dkt. 28 at 2–3. Simply put, deferring to the state court tort case here will not significantly advance Virginia's interests because "(1) the contractual coverage issue will not be decided by the state tort case, and (2)

[AAIC] is not a party to the state case." *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 414 (4th Cir. 2004). The first *Nautilus* factor does not support abstention or staying this case pending resolution of the state tort case.[2]

2. *Efficiency*

The second *Nautilus* factor—whether the state courts could resolve the issues more efficiently than the federal courts—also does not cut in M.B.'s favor. This inquiry requires the Court to consider "whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in [the state] proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in [the state] proceeding." *Littaua*, 35 F.4th at 211 (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)). The insurance issues in this case have not been, and will not be, raised in the state tort case. *See Coffey*, 368 F.3d at 414 (noting that "the contractual coverage issue will not be decided by the state tort case."). Indeed, AAIC *could not* be joined to the underlying state tort case. "Virginia law prohibits the joinder of an insurance company based on the issuance of an insurance policy to any party or for the benefit of any party to any cause." *Allstate Ins. Co. v. Lawson*, No. 2:13-cv-33, 2013 WL 5274503, at *3 n.3 (W.D. Va. Sept. 18, 2013) (citing Va. Code § 8.01-5). There is no suggestion to the contrary. Under these circumstances, "dismissing the federal coverage case would not seem to advance any cause of efficiency." *Id.*; *Littaua*, 35 F.4th at 211 ("When presented with similar facts, we have found that efficiency does not support abstention."). For

---

[2] Legacy and World Community's argument that AAIC has "ignore[d] alternative theories of vicarious liability," and its implications as to AAIC's duty to defend, concerns the merits of the argument whether AAIC has a duty to defend. *See* Dkt. 35 at 2–3 ("Thus, [AAIC] does have a duty to defend under the 'eight corners' rule."). While such arguments do not move the needle on the Court's consideration of any of the *Nautilus* factors, they may be raised in response to any motion for judgment on the pleadings concerning AAIC's duty to defend.

substantially the same reasons, Legacy and World Community's argument that they should not "be forced the litigate the same issues of fact in two different forums," and the accompanying described burdens, is a red herring. *See* Dkt. 31 at 4–5. As AAIC explains, the "coverage issues will never be decided in the underlying lawsuit." *See* Dkt. 34 at 4. And in any event, AAIC plans to file a motion for judgment on the pleadings that would not necessitate duplicative overlapping discovery or factual determinations—thereby avoiding the aforementioned burdens on Legacy and World Community. *See id.* at 4–5.

To be sure, the Court acknowledges that AAIC "had the ability to bring this same declaratory action in the state court where the [state tort] action is pending," *Littaua*, 35 F.4th at 211, even though AAIC itself could not have resolved its disputes in the *particular* pending underlying state tort action. While this factor is only one part of the governing analysis, it is yet another factor that does not support abstention or a stay.[3]

3. *Unnecessary Entanglement*

Next, the Court considers the third *Nautilus* factor—"whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state

---

[3] M.B. cites an unpublished Fourth Circuit case for the proposition that the state tort case, as the first-filed suit, should have priority under consideration of this factor. Dkt. 18 at 7 (citing *Riley v. Dozier Internet Law, PC*, 371 F. App'x 399 403 (4th Cir. 2010) (unpublished). And, to be sure, *Riley* explained that "[a]s a general rule, the first suit should have priority, absent the showing of balance of convenience in favor of the second action." *Id.* (internal quotation marks and citation omitted). Significantly, however, that case involved lawsuits that were pending in state and federal court that had overlapping claims on the merits. Dozier filed the first lawsuit against Riley in a Virginia state court for state-law trademark infringement, and Riley countered by filing the second suit the following month in federal court, seeking, among other things, a declaratory judgment that he had not infringed Dozier's trademark. *See id.* at 400–01. Such circumstances are far afield of those present in this case—in which the latter-filed federal declaratory judgment action raises questions that were not at issue in the first-filed state court case, and involved a litigant (AAIC) that *could not* be a party to that first-filed state court case. M.B.'s invocation of a default first-filed principle in *Riley* does little to support her claim that such deference is due here.

court systems because of the presence of overlapping issues of fact or law." *Nautilus*, 15 F.3d at 376–77 (internal quotations omitted). The key issue is whether this Court's ruling on the coverage dispute would result in entanglement with the state court proceedings "by preempting critical factual findings that the state court will have to make in resolving [the state plaintiff's] claims." *Littaua*, 35 F.4th at 211 (quoting *Coffey*, 368 F.3d at 413).

M.B. argues that here both cases contain certain "identical core questions," such as "whether [R]ash was an agent of Defendants Legacy and World Community at the time he groomed and sexually abused [M.B.], and whether [R]ash was acting within the scope of his agency when he groomed and sexually abused [M.B.]." Dkt. 18 at 7. In M.B.'s view, if both the state tort case and this Court "were to simultaneously find facts related to" these issues, that would create "unnecessary entanglement" between the two courts. *Id.* at 7–8. In M.B.'s view, AAIC "ignores the negligence and agency issues which are central to both cases." Dkt. 28 at 4. For instance, M.B. notes that she alleges that "Rash was an agent of AAIC's insured's Legacy and World Community, and acting within the scope of his employment, which AAIC directly challenges in its Complaint here." *Id.*

The Court sees little risk of any such unnecessary entanglement with the state tort case presented from this action. AAIC seeks a ruling that it owes no duty to provide a defense to Legacy, World Community, and Rash, and "[d]uty to defend questions do 'not require the district court to resolve factual questions at all.'" *Futura Grp., L.L.C.*, 779 F. Supp. 2d at 532 (quoting *Coffey*, 368 F.3d at 413). It is bedrock Virginia insurance law that "only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured." *AES Corp. v. Steadfast Ins. Co.*, 725 S.E.2d 532, 535 (Va. 2012). This is known as the "eight-corners rule," since "the determination is made by comparing the 'four corners' of the underlying

13

complaint with the 'four corners' of the policy, to determine whether the allegations in the underlying complaint come within the coverage provided by the policy." *Id.*; *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 155 (4th Cir. 2009) (describing eight corners rule). Thus—and far from "ignor[ing]" agency or negligence issues in the case, Dkt. 28 at 4— the Court determines that it should be able to take up dispositive threshold issues and rule on the pleadings alone (without fact-finding) concerning the scope of coverage, i.e., including whether there was an "occurrence," or whether the expected or intended injury exclusion applies to bar coverage. Dkt. 26 at 7. In other words, these issues concerning the scope of insurance coverage and AAIC's duty to defend (if any) are not going to arise in the state tort case. And these threshold legal determinations concerning whether there was an "occurrence," or whether the expected or intended injury exclusion bars coverage should require no factfinding, and no discovery. The Court sees little risk of unnecessary entanglement with the state tort case under these circumstances.[4]

M.B. argues that *Littaua* supports its argument that the third *Nautilus* factor weighs in her favor. Dkt. 28 at 4. In her view, just as the Fourth Circuit in *Littaua* explained that for the district court to determine if a breach of the insurance contract occurred was a factual overlap with that state court case, so too here would this Court have "to determine whether Rash was

---

[4] Even if the "negligence and agency issues" raised by M.B. could ultimately involve some factual overlap with the underlying state tort case, any overlap would be speculative given the posture of the case and the numerous preceding dispositive issues that AAIC intends to raise on the pleadings. *Cf. Fenwick Commons Homeowners Ass'n, Inc. v. Penn. Nat. Mut. Cas. Ins. Co.*, No. 2:19-cv-57, 2019 WL 1760150, at *4 (D.S.C. Apr. 22, 2019) ("Entanglement is likely when many of the issues in the declaratory action *are also being litigated* by the same parties in the related state court action.") (emphasis added). As those "purely legal question[s]" will be presented to the Court that "would not require the court to make any factual findings that could influence the resolution of the merits of the claims brought in the [state tort case]," the Court finds little risk of unnecessary entanglement.

acting within the scope of his employment for purposes of the policy provisions," which would "necessarily overlap with M.B.'s vicarious liability allegations in the state court proceeding." *Id*. However, *Littaua* offers little support for M.B. here because it did not involve application of the "eight-corners rule." *See* Appellant's Reply Br., *Med. Mut. Ins. of N.C. v. Littaua*, No. 21-1215, 2021 WL 2791069, at *5 & n.2 (4th Cir. July 2, 2021) ("This is, of course, not an 'eight corners' case, but a case based on a breach of a condition precedent to recovery.").

M.B. also argues that *Trustgard* offers "essential guidance in this case," and argues that as the Fourth Circuit held that dismissal of that declaratory judgment action was appropriate, so too is it appropriate here. Dkt. 28 at 1–2. That case "involve[d] state-law issues about how to apportion liability following an automobile accident." 942 F.3d at 204. Significantly, M.B. overlooks that in *Trustgard*, the court was "particularly concerned about the [federal] court's entanglement with those state-court issues given *how thin and ambiguous the record was* at the time of the district court's analysis"—in fact, "*the federal court record lacked the applicable state-court complaint*." 942 F.3d at 203 & n.7 (emphases added). Considerations that would generally favor having the state court decide the "relationship among the various defendants" became "overwhelming given the dearth of information available in the federal case." *Id.* at 204; *see also id.* (citing the "thin and ambiguous record"). However, any such concerns are mitigated where, as here, the Court has before it the relevant state-court complaint. *See* Va. Compl. The Fourth Circuit was not confronted with a duty-to-defend dispute in *Trustgard*, as the Court is here. *See* 942 F.3d at 200 ("And here, we do not face any claim about Trustgard's duty to defend the state lawsuit, only to pay a resulting judgment."). With the language of the policy and the

15

state court complaint before it, this Court is well positioned on this record to consider any duty to defend dispute pursuant to the "eight corners" rule. *See AES Corp.*, 725 S.E.2d at 535.[5]

For these reasons, the Court finds the third *Nautilus* factor does not favor abstention or a stay pending conclusion of the state tort case.

4. *Forum Shopping*

The fourth *Nautilus* factor is "whether the declaratory judgment action is being used as a device for 'procedural fencing'—that is, to provide another forum in a race for res judicata." 15 F.3d at 377 (cleaned up). M.B. contends that this final factor supports abstention. Dkt. 18 at 8. In her view, "[t]he issue of vicarious liability of Defendants Legacy and World Community," which is "central to the outcome" of her state tort case "has not been resolved," and AAIC has "raced to this Court to have the issue decided before the state court has had the opportunity to address it." *Id.* at 8. This argument does not reflect the circumstances of this case. The Court finds no evidence of procedural fencing or forum shopping.

Here, "[t]his is not a case in which a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved in a more favorable forum," considering that the "issues presented in this declaratory action are not the same as those raised in the pending state proceedings." *See Nautilus*, 15 F.3d at 380. The reasoning in *Nautilus*

---

[5] AAIC's complaint also raises the separate issue of its duty to indemnify. *See* Compl. ¶ 1. A liability insurer's duty to defend and duty to indemnify "are separate responsibilities and the scope of coverage is different for each." *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 101 F. Supp. 2d 422, 426 (E.D. Va. 2000). But "courts interpreting insurance policies have consistently construed the duty to defend as being broader than the duty to indemnify," and thus, "if there is no duty to defend, *ab initio*, there can be no duty to indemnify." *Id.* at 426–27. Accordingly, any specific arguments as may be ultimately relevant to AAIC's duty to indemnify, and any factual or legal determinations relevant thereto, need not necessarily be considered at the outset of this case but rather may follow consideration of those preliminary issues specific to AAIC's duty to defend and in AAIC's anticipated motion for judgment on the pleadings.

is equally applicable to this case. The insurance coverage dispute is not pending in the state tort case. Nor is there any indication that AAIC "merely raced" to federal court to try to obtain preclusive effect on legal or factual disputes—rather, this case "only deals with [AAIC's] obligations to defend and indemnify its insured with respect to the allegations in the underlying suit," while the state tort case "deals with underlying liability." *See Builders Mut. Ins. Co.*, 779 F. Supp. 2d at 541. As this Court is "satisfied that this federal declaratory action is not being used merely as a device for procedural fencing," *Nautilus*, 15 F.3d at 380, the Court finds that this factor does not support abstention or a stay.

It is "well established that a 'declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism' because it can 'afford relief from the uncertainty of whether coverage exists under the policy.'" *Liberty Mut. Fire Ins. Co. v. Sutton*, No. 21-1277, 2022 WL 11112589, at *5 (4th Cir. Oct. 19, 2022) (quoting *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998)). Here, a declaratory judgment in this action can provide Legacy and World Community clarity on the issue whether AAIC "would be required to pay for their defense and indemnify any judgment against them." *See Sutton*, 2022 WL 11112589, at *5 (citation omitted).

As the *Nautilus* factors weigh against abstention from jurisdiction or staying this action pending resolution of the state court case, the Court will deny M.B., Legacy and World Community's motions to dismiss or stay on this basis.

### *Burford* Abstention

The *Burford* doctrine[6] "'justif[ies] the dismissal of a federal action' in a 'narrow range of circumstances.'" *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007) (quoting *Quackenbush v.*

---

[6] The doctrine derives from *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

*Allstate Ins. Co.*, 517 U.S. 706, 726 (1996)). *Burford* permits abstention "when federal adjudication would 'unduly intrude' upon 'complex state administrative processes' because either: (1) 'there are difficult questions of state law … whose importance transcends the result in the case then at bar'; or (2) federal review would disrupt 'state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Martin*, 499 F.3d at 364 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361–63 (1989)). The Supreme Court has directed that "*Burford* allows a federal court to dismiss a case only" when presented with such "extraordinary circumstances," *Quackenbush*, 517 U.S. at 726–27, and the balancing of state and federal interests, "only rarely favors abstention," *Martin*, 499 F.3d at 364.

Defendants Legacy and World Community argue that abstention is warranted under *Burford* because "the burden of proving the precise terms of an insurance policy is not a question that has previously been considered by a Virginia state court," specifically in the context of "the General Assembly's extension of the applicable statute of limitation from two (2) years for personal injuries to twenty (20) years for civil claims alleging sexual abuse of a minor." Dkt. 31 at 5. These defendants continue that "in providing an avenue for recovery" for such claims of abuse, "the General Assembly did not resolve whether the insurer or the insured should bear the burden of retaining copies of an insurance policy or declarations page, nor did the legislature address the extent of parol evidence that should be presented to confirm the existence of relevant terms within those policies." *Id.* at 6.

Defendants have not demonstrated that this case falls within the "narrow" range of "extraordinary circumstances" supporting abstention under *Burford*. *See Martin*, 499 F.3d at 364. For one, Defendants do not identify any "complex state administrative processes," with which this action would interfere. *See id.* Furthermore, Defendants have not described any "difficult questions of state law" requiring resolution in this case. *See id.* Rather, as described

18

above, the Court considers that this case mostly involves "the routine application of settled principles of insurance law to particular disputed facts." *See Gross*, 468 F.3d at 211.

To be sure, Defendants assert that this case would break new state-law ground concerning the burden of retaining copies of insurance documents to claims that are now subject to a 20-year statute of limitations period. Dkt. 31 at 6; Dkt. 35 at 5–6. Yet, the record and briefing before the Court disclose that there is no dispute that the coverage at issue involved commercial general liability coverage. Indeed AAIC acknowledges that it "reviewed its internal records, determined it had issued policies to [Legacy and World Community], and agreed to provide [them] with a defense." Dkt. 34 at 6. And neither AAIC nor Defendants have disputed the particular commercial general liability policy language quoted above "was part of the AAIC policies." *Id.*; *see also* Compl. ¶ 56 pp. 10–12; Dkt. 35 at 5–6.[7] In other words, even the allegedly novel state-law issue Defendants raise does not appear to present itself in this case. Thus, absent any substantial indication to the contrary, the Court has no reason to think it will be "entering uncharged waters when called upon to interpret the [AAIC] policy language, but instead will be guided by well-settled principles of Virginia contract law." *See Trigo v. Travelers*

---

[7] While Legacy and World Community have not disputed that commercial general liability policy coverage was part of their policies, they have written, in a footnote, that "[i]f the matter proceeds, there is a factual and evidentiary dispute that will need to be resolved in regard to whether the Policies contained a rider affording extra coverage for claims of sexual abuse by the Charities' employees." Dkt. 35 at 5. For its part, AAIC contends that its records "indicated that they did *not* pay a premium for sexual misconduct coverage—meaning that such coverage was not included on any policy issued to the Compounds." Dkt. 34 at 6 (emphasis in original). While Legacy and World Community say there is a factual and evidentiary dispute, on this record and given their cursory treatment of the issue, it is not at all clear that there will be any such dispute. For one, they do not contend that they *did* secure additional coverage for claims of sexual abuse. Nor have Legacy and World Community articulated, much less demonstrated, how the issue of burden could not be resolvable under settled insurance principles. Therefore, at best, their argument about an evidentiary dispute is not ripe. At worst, it is nonexistent. Regardless, nothing in this argument is sufficient to demonstrate such "extraordinary circumstances" as would warrant *Burford* abstention.

*Comm'l Ins. Co.*, No. 3:10-cv-28, 2010 WL 3521759, at *8 (W.D. Va. Sept. 7, 2010) (finding *Burford* abstention not appropriate under similar circumstances). Accordingly, the Court concludes that *Burford* abstention is not appropriate.

Conclusion

For the reasons set forth above, the Court concludes that the *Nautilus* factors do not weigh in favor of dismissal or staying this action pending resolution of the pending underlying state tort action, nor does the *Burford* doctrine support a similar result. This declaratory judgment action can proceed. Accordingly, the motions to dismiss hereby are **DENIED**. Dkts. 17, 30.

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion & Order to all counsel of record.

ENTERED this __6th__ day of December, 2023.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE